**2022-**

# United States Court of Appeals for the Federal Circuit

In Re

CREEKVIEW IP LLC,

*Petitioner.*

---

*On Petition for Writ of Mandamus to the United States District Court for the District of Delaware, Case Nos. 22-cv-0426-CFC, 22-cv-0427-CFC, Honorable Colm F. Connolly, Judge*

---

## PETITION FOR A WRIT OF MANDAMUS

DAVID R. BENNETT
DIRECTION IP LAW
P.O. Box 14184
Chicago, IL 60614
D: (312) 291-1667
dbennett@directionip.com

*Counsel for Petitioner*
*Creekview IP LLC*

November 30, 2022

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Counsel for the Petitioner Creekview IP LLC ("Creekview") certifies the following:

1.     The full name of every party or *amicus* represented by me is:

Petitioner Creekview IP LLC

2.     The name of the real party in interest represented by me is:

Not applicable.

3.     All parent corporations and any publicly held companies that own 10% or more of the stock of the party or *amicus* represented by me are:

None

4.     The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

David R. Bennett, Direction IP Law

Jimmy Chong, Chong Law Firm

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

| In re: Nimitz Technologies LLC | 2023-103 (Fed.Cir.) |
|---|---|
| Nimitz Technologies LLC v. CNET Media, Inc. | 1:21-cv-1247-CFC (D.Del.) |
| Nimitz Technologies LLC v. BuzzFeed, Inc. | 1:21-cv-1362-CFC (D.Del.) |
| Nimitz Technologies LLC v. Imagine Learning, Inc. | 1:21-cv-1855-CFC (D.Del.) |
| Nimitz Technologies LLC v. Bloomberg L.P. | 1:22-cv-0413-CFC (D.Del.) |
| Backertop Licensing LLC v. August Home, Inc. | 1:22-cv-0573-CFC (D.Del.) |
| Backertop Licensing LLC v. Canary Connect, Inc | 1:22-cv-0572-CFC (D.Del.) |
| Lamplight Licensing LLC v ABB, Inc., | 1:22-cv-0418-CFC (D.Del.) |

| Lamplight Licensing LLC v Ingam Micro, Inc., | 1:22-cv-1017-CFC (D.Del.) |
| Mellaconic IP, LLC v. Timeclock Plus, LLC | 1:22-cv-0244-CFC (D.Del.) |
| Mellaconic IP, LLC v. Deputy, Inc. | 1:22-cv-0541-CFC (D.Del.) |
| Swirlate IP LLC v. Quantela, Inc. | 1:22-cv-0235-CFC (D.Del.) |
| Swirlate IP LLC v. Lantronix, Inc. | 1:22-cv-0249-CFC (D.Del.) |
| Waverly Licensing LLC v. AT&T Mobility LLC | 1:22-cv-0420-CFC (D.Del.) |
| Waverly Licensing LLC v. Granite River Labs Inc. | 1:22-cv-0422-CFC (D.Del.) |

6.      Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed.Cir. R. 47.4(a)(6).

   None.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................III

TABLE OF AUTHORITIES ................................................................. V

INTRODUCTION ................................................................................1

RELIEF SOUGHT ..............................................................................5

ISSUES PRESENTED ..........................................................................5

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................6

    A. Creekview Was Owner of a Patent and Sued Defendants .........................6

    B. The District Court's Standing Order and Creekview's Responses ...........6

    C. The District Court *Sua Sponte* Begins its Judicial Investigation ..............8

    D. The District Court Has Not Ruled on Petitioner's Motion to Stay Pending the Mandamus Petition in *Nimitz* or Pending Disclosure by the District Court of Why the District Court Has Concerns Regarding the Petitioners Disclosures.........................................................................9

REASONS FOR ISSUING THE WRIT.................................................10

    I.  Petitioner Has A Clear And Indisputable Right To The Writ............12

    A. The District Court Lacks Article III Jurisdiction to Proceed with the Hearing .................................................................................12

    B. Regardless of Jurisdiction, the District Court's Investigation and Two Standing Orders Are Barred from Consideration by Statute, the Federal Rules, and This Court's Precedent .........................................14

    C. The Interests of Judicial and Patent Policy Support Issuing the Writ......19

    II.  Petitioner Has No Other Adequate Means to Obtain Relief .............20

    III. Mandamus Is Appropriate Here Because the District Court Has Undertaken an Illegal and Unprecedented Crusade Trying to Enforce its Own Patent Policy in Derogation of Congress' Prerogative and This Court's Precedent ............................................20

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................23

# TABLE OF AUTHORITIES

## CASES

*Arachnid, Inc. v. Merit Indus., Inc.*,
939 F.2d 1574 (Fed.Cir. 1991)................................................................17

*Bennett v. Donovan*,
703 F.3d 582 (D.C. Cir. 2013) ...............................................................7

*Biotechnology Indus. Org. v. District of Columbia*,
496 F.3d 1362 (Fed.Cir. 2007)...............................................................19

*Cheney v. United States Dist. Court*,
542 U.S. 367 (2004) ........................................................................ 11, 20

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)............................................................................13

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
261 U.S. 24 (1923)..............................................................................17

*De Beers Consol. Mines, Ltd. v. United States*,
325 U.S. 212 (1945).........................................................................3, 11

*First Indep. Bank of Nev. v. Mohave State Bank*,
2010 U.S. Dist. LEXIS 34517 (D. Ariz. 2010)....................................7

*Found., Inc. v. Fujifilm Med. Sys. U.S.A.*,
19 F.4th 1315 (Fed.Cir. 2021) .............................................................16

*Google LLC, In re*,
949 F.3d 1338 (Fed.Cir. 2020)............................................................23

*Kellogg Brown & Root, Inc., In re*,
756 F.3d 754 (D.C. Cir. 2014) .............................................................21

*Kimble v. Marvel Entm't, LLC*,
576 U.S. 446 (2015) ............................................................................19

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
507 U.S. 163 (1993) ............................................................................16

*Lewis v. Continental Bank Corp.*,
494 U.S. 472 (1990) ................................................................. 12

*Mote v. Wilkie*,
976 F.3d 1337 (Fed.Cir. 2020) ................................................ 21

*Nat'l Bank v. Marine City, Inc.*,
411 F.2d 674 (3rd Cir. 1969) ................................................... 12

*Pandrol USA, LP v. Airboss Ry. Prods.*,
320 F.3d 1354 (Fed.Cir. 2003) ................................................ 18

*Paradise Creations, Inc. v. U V Sales, Inc.*,
315 F.3d 1304 (Fed.Cir. 2003) ................................................ 16

*Prima Tek II, L.L.C. v. A-Roo Co.*,
222 F.3d 1372 (Fed.Cir. 2000) ................................................ 17

*Queen's Univ. at Kingston, In re*,
820 F.3d 1287 (Fed.Cir. 2016) ................................................ 23

*Roche v. Evaporated Milk Ass'n*,
319 U.S. 21 (1943) .................................................................. 11

*SmallBizPros, Inc. v. MacDonald*,
618 F.3d 458 (3rd Cir. 2010) ................................................... 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ................................................................. 19

*State Nat'l Ins. Co. v. County of Camden*,
824 F.3d 399 (3rd Cir. 2016) ................................................... 12

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................................................................. 13

*Taylor v. Taylor Made Plastics*, Inc.,
565 F. App'x 888 (Fed.Cir. 2014) ........................................... 17

*Uniloc USA, Inc. v. Apple Inc.*,
784 F.App'x 763 (Fed.Cir. 2019) ............................................ 16

*United States v. Christian*,
  660 F.2d 892 (3rd Cir. 1981) .............................................................4, 11

*United States v. Sineneng-Smith*,
  140 S. Ct. 1575 (2020) ................................................................. 14, 22

*United States v. United States Dist. Court for the Dist. of Nev.*,
  791 F.3d 945 (9th Cir. 2015)......................................................................22

*Volkswagen Grp. of Am.*, *In re*,
  28 F.4th 1203 (Fed.Cir. 2022) .............................................. 11, 18, 22

*Will v. United States*,
  389 U.S. 90 (1967) ...............................................................................4

*Willy v. Coastal Corp.*,
  503 U.S. 131 (1992)...................................................................... 13, 14

## STATUTES

28 U.S.C. §1651(a) ....................................................................................10

35 U.S.C. §100 ................................................................................. 15, 17

35 U.S.C. §281 .........................................................................................15

## OTHER AUTHORITIES

16 WRIGHT & MILLER § 3932...........................................................11

*Black's Law Dictionary* (9th ed. 2009) ...................................................7

## RULES

Fed.R.Civ.P. Rule 17(a)(1) ......................................................... 15, 16, 18

Fed.R.Civ.P. Rule 7.1 ...............................................................................1

## INTRODUCTION

Petitioner asks the Court to review and reverse the attached *sua sponte* Memorandum Order ordering an evidentiary hearing in the cases on December 6, 2022 ("Hearing Order"). (Appx001-002). The district court has no Article III jurisdiction to continue the *sua sponte* Hearing Order because the cases have been voluntarily dismissed by the parties, and the district court has not articulated any recognized collateral issues that could support the hearings after the dismissal of the cases. Even if the district court had Article III jurisdiction to continue the hearings, the continuation constitutes an abuse of discretion. This petition challenges the same standing order and investigation as the co-pending petition for writ of mandamus in *In re Nimitz Techs. LLC*, Appeal No. 2023-103, (Fed.Cir. 2022) ("*Nimitz*"), with the addition that this petition involves cases that have been dismissed and thus raise Article III jurisdictional issues, and the district court is also investigating disclosures for a second standing order.

The Hearing Order relates to two new standing orders entered by the district court after these cases were filed. The first standing order expands the requirements of Fed.R.Civ.P. Rule 7.1 to require certain types of entities to identify every person "up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified." Although the order does not apply to Petitioner because Petitioner is not one of the enumerated entities

1

required to provide the disclosure, Petitioner filed a disclosure identifying its sole individual owner and managing member.

The second standing order requires all parties to disclose details on any third party that provides non-recourse funding for the case. Petitioner has no third-party non-recourse funding and therefore no disclosure was required. Petitioner filed a Declaration stating that Petitioner complied with the two standing orders and further stating that Petitioner does not receive any third-party non-recourse funding.

Despite the disclosure and declaration, the district court entered the *sua sponte* Hearing Order requiring Petitioner's managing member and its lead attorney to fly to Delaware for interrogation by the district court on December 6, 2022. The sole basis for the hearing is the district court's unexplained "concerns about the accuracy" of Petitioner's disclosures responsive to the two standing orders. The district court has not articulated any reason for the "concerns" and there is no evidence in the record (or otherwise) to dispute the accuracy of Petitioner's disclosures.

There is no Article III jurisdiction of the district court to continue the Hearing Order because both cases have been dismissed, one through timely voluntary dismissal and the other pursuant to stipulation signed by both parties. The district court's vague "concerns" without any factual support fail to provide any basis for maintaining ancillary jurisdiction after the dismissal.

Petitioner has sought relief in the district court by requesting guidance from the district court regarding what information is being sought and what raised the district court's "concerns" regarding Petitioner's disclosures. The district court has not responded.

Petitioner filed a motion to stay stating that the district court lacks jurisdiction and also that the hearing should be stayed because of the petition for writ of mandamus in *Nimitz*, which addresses one of the two standing orders and the same district court investigation at issue here.[1] Although this Court has stayed the investigations in the *Nimitz* cases, the district court has not responded to Petitioner's motion to stay.

Mandamus is appropriate because enforcing the *sua sponte* Hearing Order is improperly maintaining ancillary jurisdiction without articulating any recognized collateral issues that could support proceeding with the hearing after the dismissal of the case. "[W]hen a court has no judicial power to do what it purports to do -- when its action is not mere error but usurpation of power -- the situation falls precisely within the allowable use" of a writ. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217 (1945). Similarly, addressing the issue of whether the

---

[1] Petitioner's motion to stay also noted that failing to stay the cases would result in Petitioner having to file this parallel petition for mandamus. (Appx183-184).

3

district court is "granted [the power] or forbidden" the power to enforce its Hearing Order "presents an opportunity for mandamus review to fulfill its 'vital corrective and didactic function.'" *United States v. Christian*, 660 F.2d 892, 897 (3rd Cir. 1981) (*quoting Will v. United States*, 389 U.S. 90, 107 (1967)).

Even if the district court can articulate an appropriate collateral issue to maintain jurisdiction, the district court's two standing orders are irrelevant to any issue in the cases and are not supported by any statute or rule. As shown by the district court's hearings in the *Nimitz* cases and other cases, the district court's interest is in the "real party in interest." However, both the Patent Act, the Federal Rules of Civil Procedure, and this Court's precedent reject the court's consideration of such facts. The improper standing orders provide grounds for granting a writ because mandamus can "used as a means of policing compliance with the procedural rules… by using [the appellate court] to review orders that are part of a general practice adopted by the district court which is outside the scope of the rules." *U.S. v. Christian*, 660 F.2d at 896 (quotation marks and internal citation removed).

As these cases have been dismissed so that there will be no final judgement to appeal, mandamus would not result in piecemeal appeals because there are "no ongoing action[s] that review would disrupt." *Id.* at 897.

## RELIEF SOUGHT

Petitioner respectfully requests that the Court issue a writ of mandamus reversing the Memorandum Order and ending the judicial inquisition of Petitioner.

## ISSUES PRESENTED

The petition raises the following issues:

1.     Whether the district court lacks Article III jurisdiction to enforce its Hearing Order investigating Petitioner's compliance with standing orders when the cases have been dismissed and there is no evidence refuting the accuracy of Petitioners disclosures or Petitioner's compliance with the standing orders?

2.     Did the district court abuse its discretion in entering its Standing Order Regarding Third-Party Litigation Funding Arrangements and Standing Order Regarding Disclosures Statements Required by Federal Rule of Civil Procedure 7.1 because the information sought by the standing orders is not relevant to any issue that the district court may consider?

3.     Do the district court's standing orders and Hearing Order contradict the Patent Act and the Rules of Civil Procedure by seeking to identify a "real party in interest" that Congress has deemed irrelevant?

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Creekview Was Owner of a Patent and Sued Defendants

The Petitioner is Creekview IP LLC ("Creekview").  Creekview filed the two cases that form the caption of the Memorandum Order.  Creekview's complaint against Jabra Corporation ("Jabra") is Appx013-088 and Creekview's complaint against Skullcandy Inc. ("Skullcandy") is Appx089-168.  Both complaints allege infringement of U.S. Patent No. 9,608,472.

Both complaints affirm that Petitioner is the named assignee of the '472 patent with the right to enforce the patent.  (Appx14 at ¶8; Appx90 at ¶8).  That Petitioner is the lawful assignee of the patents-in-suit is reflected in the public records of the United States Patent and Trademark Office as reflected in Appx187-189 of which the Court can take judicial notice.

### B.     The District Court's Standing Order and Creekview's Responses

On April 19, 2022, the district court issued two standing orders.  The "Standing Order Regarding Third-Party Litigation Funding Arrangements" requires that parties disclose all

> arrangements to receive from a person or entity that is not a party (a "Third-Party Funder") funding for some or all of the party's attorney fees and/or expenses to litigate this action on a non-recourse basis ….

6

(Appx004-005).[2]

The "Standing Order Regarding Disclosure Statement Required by Federal Rule of Civil Procedure 7.1" requires that all "nongovernmental joint venture, limited liability corporation, partnership, or limited liability partnership" must disclose:

> "the name of every owner, member, and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified.

(Appx003).

Although Creekview is a limited liability **company** (not corporation) that is not required to submit a disclosure in response to the standing order on ownership,

———————————

[2] The ordinary distinction between "recourse basis" and "non-recourse basis" is reflected in, for example, publications of the United States Internal Revenue Service:

> There are two types of debts: recourse and nonrecourse. A recourse debt holds the borrower personally liable. All other debt is considered nonrecourse.

(https://apps.irs.gov/app/vita/content/36/36_02_020.jsp). *See also Bennett v. Donovan*, 703 F.3d 582, 585 (D.C. Cir. 2013) ("Reverse mortgages are generally non-recourse loans, meaning that if a borrower fails to repay the loan when due, and if the sale of the home is insufficient to cover the balance, then the lender has no recourse to any of the borrower's other assets"); *First Indep. Bank of Nev. v. Mohave State Bank*, 2010 U.S. Dist. LEXIS 34517 at *6 (D. Ariz. 2010) ("A non-recourse loan is a 'secured loan that allows the lender to attach only the collateral, not the borrower's personal assets, if the loan is not repaid'") (quoting *Black's Law Dictionary* 1020-21 (9th ed. 2009)).

Creekview submitted a disclosure statement stating that the sole owner and managing member is Jacob LaPray. (Appx169-170). Creekview did not receive any non-recourse funding and therefore did not submit a statement regarding non-recourse funding. (*E.g.*, Appx179-180).

Defendant Skullcandy did not submit a statement in response to the standing order on non-recourse funding, but submitted a disclosure in response to the standing order on ownership, though such disclosure did not appear to disclose the "name of every owner, member, and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified." (Appx292). Defendant Jabra did not answer the complaint and did not submit a disclosure in response to the district court's standing orders on ownership or non-recourse funding.

### C.    The District Court *Sua Sponte* Begins its Judicial Investigation

On September 12, 2022, the district court *sua sponte* entered a Memorandum Order ordering Petitioner's managing member, Jacob LaPray, to fly from his home in Texas to testify in Wilmington, Delaware, at an evidentiary hearing directed "to determine[ing] whether the amended corporate disclosure statements are accurate and whether Plaintiff has complied with the Court's standing order regarding third-party litigation funding." (Appx001-002). The district court did not disclose any

8

evidence or basis for stating that Petitioner did not comply with the standing orders. (*Id.*). The district court directed no such order to either defendant.

Petitioner filed a letter with the district court requesting that the district court provide guidance regarding "any further documents or evidence it seeks to obtain in the scheduled evidentiary hearing so [Petitioner] may be fully responsive and ensure that the requested information is available" to the district court. (Appx177-178). Petitioner further reiterated that it did not receive any non-recourse funding. (*Id.*). The district court has not responded.

Creekview filed a timely Notice of Voluntary Dismissal With Prejudice in the Jabra case on October 6, 2022 to dismiss the case in its entirety. (Appx171-172). Creekview and Skullcandy signed a Joint Stipulation To Dismiss, which was filed on September 28, 2022 to dismiss the Skullcandy case in its entirety. (Appx175-176). The district court has not acknowledged that the cases have been dismissed.

**D.    The District Court Has Not Ruled on Petitioner's Motion to Stay Pending the Mandamus Petition in *Nimitz* or Pending Disclosure by the District Court of Why the District Court Has Concerns Regarding the Petitioners Disclosures**

After the Court agreed to hear the *Nimitz* petition addressing one of the same standing orders, Petitioner filed a motion to stay with the district court. (Appx181-186). The motion requested that the district court stay the hearing on three bases. First, Petitioner requested that the district court stay the Hearing Order and hearing pending this Court's ruling on the petition in *Nimitz*. (Appx181-184). A stay will

not impact either case because dismissals have been filed in both cases, so the cases are dismissed. (*Id.*). Second, Petitioner requested a stay of the order and hearing because the district court did not have Article III jurisdiction to go forward with the hearings and order Petitioner's principal to appear at a hearing after the cases have been dismissed. (Appx184-185). Third, Petitioner requested that the district court disclose any evidence that Petitioner's disclosures were not accurate. (Appx185-186). The district court has not ruled on Petitioner's motion to stay.

The district court is therefore proceeding with the hearing on "concerns about the accuracy" of Petitioner's disclosures when there is no evidence to refute that Petitioner's disclosures or notices of compliance are accurate. Petitioner does not receive any non-recourse funding and Petitioner disclosed its sole owner, so it complied with the district court's two new standing orders. (*E.g.*, Appx179-180).

## REASONS FOR ISSUING THE WRIT

Pursuant to the All Writs Act, appellate courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a).

Before a court may issue a writ, three conditions must be satisfied:

First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires--a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its

10

discretion, must be satisfied that the writ is appropriate under the circumstances.

*Cheney v. United States Dist. Court*, 542 U.S. 367, 380-81 (2004) (internal citations omitted; emphases supplied). *See also In re Volkswagen Grp. of Am.*, 28 F.4th 1203, 1206-07 (Fed.Cir. 2022).

"The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine [the court against which mandamus is sought] to a lawful exercise of its prescribed jurisdiction." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004) (*quoting Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). "[W]hen a court has no judicial power to do what it purports to do -- when its action is not mere error but usurpation of power -- the situation falls precisely within the allowable use" of a writ. *De Beers*, 325 U.S. at 217. Mandamus is also "used as a means of policing compliance with the procedural rules… by using it to review orders that are part of a general practice adopted by the district court which is outside the scope of the rules." *U.S. v. Christian*, 660 F.2d at 896 (quotation marks and internal citation removed); *see also* 16 WRIGHT & MILLER § 3932 ("The most common traditional statement is that the extraordinary writs are available to a court of appeals to prevent a district court from acting beyond its jurisdiction, ….").

## I.  Petitioner Has A Clear And Indisputable Right To The Writ

### A.    The District Court Lacks Article III Jurisdiction to Proceed with the Hearing

The district court lacks jurisdiction to hold a hearing pursuant to its Hearing Order in view of the dismissal of the cases.  "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).  There is no ongoing case or controversy because Creekview timely voluntarily dismissed with prejudice the Jabra case, and in the Skullcandy case a joint stipulation of dismissal was filed, which was signed by both parties.  (Appx171-172; Appx175-176).  "The entry of such a stipulation of dismissal is effective automatically and does not require judicial approval."  *Nat'l Bank v. Marine City, Inc.*, 411 F.2d 674, 677 (3rd Cir. 1969).  "[A]ny action by the district court after the filing of such a stipulation can have no force or effect because the matter has already been dismissed by the parties themselves without any court action." *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463 (3rd Cir. 2010)); *State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 407 (3rd Cir. 2016); *In re Bath and Kitchen Fixtures Antitrust Lit*, 535 F.3d 161, 165 (3rd Cir. 2008) (internal citations omitted) ("A timely notice of voluntary dismissal invites no response from the district court and permits no interference by it."); *Rosetti v. Shalala*, 12 F.3d 1216, 1217 n.2 (3rd Cir. 1993) ("[W]ithout a case or controversy, the district court lacked Article III jurisdiction" to take any further action in the

case.).  When jurisdiction ceases the exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  The district court therefore has no jurisdiction to hold the hearing required by its Hearing Order.

It is recognized and "well established that a federal court may consider collateral issues after an action is no longer pending." *Willy v. Coastal Corp*., 503 U.S. 131, 138 (1992) (*quoting Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 395-396 (1990)).  A court can, for example, determine collateral issues such as "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id*.  "Such an order implicates no constitutional concern because it 'does not signify a district court's assessment of the legal merits of the complaint.'" *Id*.  Here, however, the district court has not identified any recognized collateral issues that could support the hearing after the dismissal of the cases.  There was no pending motion by any defendant and no suggestion that any attorney had acted improperly.  The district court has only vaguely alleged "concerns about the accuracy" of Petitioner's disclosures and, despite Petitioner's requests, the district court has provided no further explanation for its Hearing Order.  In contrast, Petitioner's disclosure and declaration indisputably show that Petitioner complied with the standing orders and there is no evidence to the contrary.  (*See* Appx169-170; Appx179-180).  Without any dispute to address, the district court should remain

a "passive instrument[] of government" and "should not[] sally forth… looking for wrongs to right." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (citation omitted). The district court therefore lacks Article III jurisdiction to enforce its Hearing Order and hold the hearing.

### B.    Regardless of Jurisdiction, the District Court's Investigation and Two Standing Orders Are Barred from Consideration by Statute, the Federal Rules, and This Court's Precedent

Proceeding with the district court's investigation is also improper because the two underlying standing orders that serve as the basis for the district court's investigation are an abuse of discretion because they seek information that is barred from consideration by the Patent Act and this Court's precedent. In prior evidentiary hearings like the one the district court intends to hold in this case, the district court has provided only one justification for the two standing orders and the Hearing Order: the district court is interested in determining "whether the real parties in interest are before the Court." (Appx277 at lines 20-23; Appx281 at lines 5-23; Appx216 at 107:14-19). But if this is the basis for the district court's actions, the effort is fatal for two reasons. First, any question of "real party in interest" constitutes the "court's assessment of the legal merits of the complaint," which the district court has no jurisdiction to pursue after the cases were dismissed. *Willy*, 503 U.S. at 138.

14

Second, Congress had already disallowed such inquiries, and, thus, the district court's stated justification only reinforces that the district court's orders constitute an abuse of discretion. The Patent Act states plainly and unequivocally that a "patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. §281. Congress defined the term "patentee" as "includ[ing] not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. §100. Thus, Congress provided that the legal title holder to a patent, and only the legal title holder, could enforce a patent.

Further, directly related to the district court's concern of the real parties in interest, Fed.R.Civ.P. Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest," and then further defined that:

> The following may sue in their own names without joining the *person for whose benefit the action is brought*: ***
>
> (G) a party authorized by statute.

(Emphasis added). Thus, Congress provided that only the legal title holder of a patent—the patentee—can sue and is the only real party in interest. And Congress explicitly stated that a "person for whose benefit the action is brought" was *not* the proper plaintiff.

The necessary consequence of the above statutes is that Congress made the choice that "person[s] for whose benefit the action is brought" are inconsequential in patent enforcement. The courts cannot consider facts relating to who might be

15

the beneficiaries of patent enforcement.  This is so because where the statutes and rules clearly define the sole real party in interest, the district court has no right to choose to pursue other parties in interest.  The classic *expressio unius est exclusio alterius* canon of statutory construction states that the expression of one thing in the Patent Act and the Federal Rules implies the exclusion of others.  *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) ("the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under §1983. *Expressio unius est exclusio alterius*.").

Consistent with 35 U.S.C. §§100 and 281 and Rule 17(a)(1), this Court has held that "[t]he Patent Act provides that *only* a patentee shall have remedy by civil action for infringement of his patent.'" *Paradise Creations, Inc. v. U V Sales, Inc*., 315 F.3d 1304, 1308 (Fed.Cir. 2003) (emphases supplied, internal quotes omitted); *see also Uniloc USA, Inc. v. Apple Inc*., 784 F.App'x 763, 766 (Fed.Cir. 2019) (same); *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A*., 19 F.4th 1315, 1319 (Fed.Cir. 2021) ("Only a 'patentee' may bring a civil action for patent infringement").

Further, this Court has also held that "[t]he Supreme Court has long held that 'the profits or damages for infringement cannot be sued for except on the basis of

16

title as patentee, or as such assignee or grantee, to the whole or a part of the patent, and not on the basis merely of the assignment of a right to a claim for profits and damages, severed from such title.'" *Prima Tek II, L.L.C. v. A-Roo Co*., 222 F.3d 1372, 1381 (Fed.Cir. 2000) (*quoting Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 42 (1923) in parenthetical).

Nor does it matter that a person other than patent owner has some equitable interest in a patent. "[A] party is not co-owner of a patent for standing purposes merely because he or she holds an equitable interest in the patent" because "a co-owner must hold legal title to the patent." *Taylor v. Taylor Made Plastics*, Inc., 565 F. App'x 888, 889 (Fed.Cir. 2014) (*citing Arachnid, Inc. v. Merit Indus., Inc*., 939 F.2d 1574, 1578-82 (Fed.Cir. 1991) and *Crown Die*, 261 U.S. at 40-41).

Thus, the district court's pursuit of "real parties in interest" is an affront to the plain language of the Patent Act and the Federal Rules, as well as this Court's precedent. It does not matter if a Plaintiff patent owner has funding or if other persons have some interest in the litigation or even if some third-party may have some equitable rights in the patent. Nor is the entire "chain of ownership" of the Petitioner patent owner relevant. The only relevant issue is whether Petitioner is the legal title holder to the patents-in-suit – i.e., is the patentee. Hypothetically, a third-party can by contract own 100% of the recovery in a patent suit but 35 U.S.C. §100

and Rule 17(a)(1)(G) still allow only the patent owner to be the party plaintiff and "real party in interest."

Similarly, there is no abuse or threat to the judicial system if the legal title holders prosecute patent cases without disclosing who might be other parties in interest (including any chain of ownership for the patent owner) or who might be making litigation decisions, because that is what Congress has demanded.[3] The only threat and abuse of the judicial system occurs is when anyone defies Congress' choice and attempts to rewrite patent law.

The district court's demands at transparency defy the law by demanding disclosures that Congress deemed irrelevant. Mandamus is necessary to prevent the district court's usurpation of Congress' judgment precluding the type of inquiry that the district court has begun to pursue *sua sponte*. *In re Volkswagen Grp. of Am.*, 28 F.4th 1203, 1214 (Fed.Cir. 2022) (petition for a writ of mandamus granted because "the district court's venue conclusions were a clear abuse of discretion for erroneously interpreting governing law and reaching a patently erroneous result").

---

[3] There can be no issue as to the fact that Petitioner is the owner of the patent. Courts can take judicial notice that the patent was assigned to Petitioner because the assignment was recorded in the U.S. Patent and Trademark Office as reflected on the official USPTO Patent Center. *Cf.*, *Pandrol USA, LP v. Airboss Ry. Prods.*, 320 F.3d 1354, 1368 (Fed.Cir. 2003).

### C.    The Interests of Judicial and Patent Policy Support Issuing the Writ

Patent policy may be considered when interpreting statutes, but patent policy cannot be invoked to change the course promulgated by Congress.  "[T]he choice of what patent policy should be lies first and foremost with Congress."  *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 463 (2015).  Even if there were merit to the district court's concerns, then in this case as in any other "Congress … is [the] proper audience." *Id*.; *see also Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 430-31 (1984) ("[A]s new developments have occurred in this country, it has been the Congress that has fashioned the new rules that technology made necessary"); *Biotechnology Indus. Org. v. District of Columbia*, 496 F.3d 1362, 1373 (Fed.Cir. 2007) ("Congress, as the promulgator of patent policy, is charged with balancing these disparate goals.  The present patent system reflects the result of Congress's deliberations.  Congress has decided that patentees' present amount of exclusionary power, the present length of patent terms, and the present conditions for patentability represent the best balance between exclusion and free use").

The district court's standing orders do not apply patent policy and instead change it.  Congress decreed that only the patent owner may enforce a patent and is the only party in interest.  There are manifest reasons for Congress' judgment, not the least being avoiding the disruptions and invasion of privacy that would be incurred in trying to divine who might have "real interests" in a patent as reflected

19

by the district court's standing orders. The demanded evidentiary hearing on the district court's standing orders does not address anything remotely relevant to the laws that Congress wrote.

## II. Petitioner Has No Other Adequate Means to Obtain Relief

Mandamus is the only way for Petitioner to obtain relief here. The cases have been dismissed so there will be no final judgement to appeal. Petitioner has complied with the district court's standing orders[4] and submitted a supporting declaration of compliance. There is no evidence to refute Petitioner's compliance. Without this Court's intervention, the district court will continue its post-dismissal prosecutorial path of forcing Petitioner to be subject to the interrogation by the district court without any basis for the district court's alleged "concerns about the accuracy" of Petitioner's disclosures.

## III. Mandamus Is Appropriate Here Because the District Court Has Undertaken an Illegal and Unprecedented Crusade Trying to Enforce its Own Patent Policy in Derogation of Congress' Prerogative and This Court's Precedent

This Court has noted that *Cheney*'s third factor is "a relatively broad and

---

[4] Despite Petitioner's responses to the standing orders, no response by Petitioner to either standing order was actually required. As explained above, the standing order on ownership did not require a disclosure by limited liability *company*, and the standing order on third-party funding did not require disclosure when a party only received recourse funding.

amorphous totality of the circumstances consideration." *Mote v. Wilkie*, 976 F.3d 1337, 1343 (Fed.Cir. 2020) (quoting *In re Kellogg Brown & Root, Inc*., 756 F.3d 754, 762 (D.C. Cir. 2014) (Kavanaugh, J.)). *Cheney's* "phrasing suggests that the third factor is intended more as a final check on granting the writ than as an amorphously discretionary means of denying it, without consulting the other two factors." *Id.*

The standing orders and Hearing Order manifest that the district court is seeking to create a new patent policy requiring disclosure of the "real parties in interest." Despite the cases being dismissed by a timely voluntary dismissal and joint stipulation, respectively, and the Petitioner's undisputed compliance with the standing orders, the district court is proceeding with prosecuting Petitioner to enforce the district court's newly created "real party in interest" patent policy. Whether the policy is laudable or capricious, patent policies are made by Congress and not by judges. Petitioner acted according to law and was entitled to enforce its patent in accordance with established law. The district court's inquisition is plainly designed to establish that persons other than Petitioner control the litigations and benefit from the litigations. Whether that is true or not, the inquisition is legally irrelevant and is legally indefensible.

Indeed, it is not even apparent what concerns the district court beyond nebulous concern for who makes litigation decisions or may be a real party in

interest.  The district court is effectively a lone-wolf prosecutor, conducting an open-ended investigation without any legal justification or providing any basis. *Sineneng-Smith*, 140 S. Ct. at 1579 (Courts are "passive instrument[] of government" that "should not[] sally forth… looking for wrongs to right.").

The district court's inquisition in these cases is also not a one-off procedure, *e.g.*, the *Nimitz* petition, which weighs in favor of mandamus.  Despite this Court staying the district court's continued investigation in the *Nimitz* cases, *Nimitz*, Appeal No. 2023-103, Doc. 5 (Fed.Cir. Nov. 17, 2022), the district court is continuing to conduct hearings in these cases and other cases on the same issue raised in *Nimitz*.  Thus, the district court is implementing its new policy in a series of cases.

The present exceptional circumstances warrant immediate review, and the district court's aberrant policy is a subject particularly fit for mandamus because its novel policy directly impacts "proper judicial administration" across a number of cases.  *In re Volkswagen Grp. of Am.*, 28 F.4th 1203, 1207 (Fed.Cir. 2022); *United States v. United States Dist. Court for the Dist. of Nev.*, 791 F.3d 945, 960 (9th Cir. 2015) ("The fact that Judge Jones's order in this case was not an isolated occurrence weighed in favor of granting mandamus relief when the petition was filed.").

Citing *Schlagenhauf*, the Court has also noted that "[t]he Supreme Court has confirmed that the requirements for mandamus are satisfied when the district court's

decision involves 'basic' and 'undecided' legal questions." *In re Google LLC*, 949

F.3d 1338, 1341 (Fed.Cir. 2020).

This Court has also held that:

> Importantly, the Supreme Court has confirmed that mandamus relief may be appropriate in certain circumstances to decide "basic" and "undecided" questions. In addition, mandamus may be appropriate "to further supervisory or instructional goals where issues are unsettled and important."

*In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed.Cir. 2018) (quoting and citing

*Schlagenhauf* and *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed.Cir.

2016)).

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Petitioner respectfully requests that the Court issue

a writ of mandamus directing the district court to vacate its Hearing Order and cease

the district court's judicial investigation of the Petitioner.

Respectfully Submitted,

November 30, 2022                    */s/ David R. Bennett*
                                     DAVID R. BENNETT
                                     DIRECTION IP LAW
                                     P.O. Box 14184
                                     Chicago, IL 60614
                                     D: (312) 291-1667
                                     dbennett@directionip.com

                                     *Attorneys for Petitioner Creekview IP LLC*

23

# ADDENDUM

## <u>ADDENDUM TABLE OF CONTENTS</u>

Memorandum Order ("Hearing Order") entered on September 12, 2022 (C.A. No. 22-cv-426 Doc. No. 15) ............................................................................. Appx001-002

Standing Order Regarding Disclosure Statements required by Federal Rule of Civil Procedure dated April 18, 2022 (Chief Judge Colm F. Connolly) ...............................................Appx003

Standing Order Regarding Third-Party Litigation Funding Arrangements dated April 18, 2022 (Chief Judge Colm F. Connolly) ...................................................... Appx004-005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CREEKVIEW IP LLC,                    )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )   Civ. No. 22-426-CFC
                                     )
JABRA CORPORATION,                   )
                                     )
        Defendant.                   )

CREEKVIEW IP LLC,                    )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )   Civ. No. 22-427-CFC
                                     )
SKULLCANDY INC.,                     )
                                     )
        Defendant.                   )

## **MEMORANDUM ORDER**

Whereas the amended corporate disclosure statements filed by Plaintiff in the above-captioned cases identify Jacob LaPray as Plaintiff's owner; and

Whereas the Court has concerns about the accuracy of those statements and whether Plaintiff has complied with the Court's standing order regarding third-party litigation funding;

NOW THEREFORE, at Wilmington on this Twelfth day of September in 2022, it is HEREBY ORDERED that:

1. The Court will hold on December 6, 2022 at 1:00 p.m. an evidentiary

   hearing to determine whether the amended corporate disclosure

   statements are accurate and whether Plaintiff has complied with the

   Court's standing order regarding third-party litigation funding;

2. The following individuals shall attend the hearing in person: Jimmy

   Chong and Jacob LaPray.

   _____
   CHIEF JUDGE

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STANDING ORDER REGARDING DISCLOSURE STATEMENTS
<u>REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 7.1</u>

At Wilmington on this Eighteenth day of April in 2022, it is HEREBY

ORDERED in all cases assigned to Judge Connolly where a party is a

nongovernmental joint venture, limited liability corporation, partnership, or limited

liability partnership, that the party must include in its disclosure statement filed

pursuant to Federal Rule of Civil Procedure 7.1 the name of every owner, member,

and partner of the party, proceeding up the chain of ownership until the name of

every individual and corporation with a direct or indirect interest in the party has

been identified.

_____
Chief Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STANDING ORDER REGARDING
THIRD-PARTY LITIGATION FUNDING ARRANGEMENTS

At Wilmington on this Eighteenth day of April in 2022, it is HEREBY

ORDERED in all cases assigned to Chief Judge Connolly where a party has made

arrangements to receive from a person or entity that is not a party (a "Third-Party

Funder") funding for some or all of the party's attorney fees and/or expenses to

litigate this action on a non-recourse basis in exchange for (1) a financial interest

that is contingent upon the results of the litigation or (2) a non-monetary result that

is not in the nature of a personal loan, bank loan, or insurance:

1.      Within the later of 45 days of this Order or 30 days of the filing of an

initial pleading or transfer of the matter to this District, including the removal of a

state action, the party receiving such funding shall file a statement (separate from

any pleading) containing the following information:

a.      The identity, address, and, if a legal entity, place of formation

of the Third-Party Funder(s);

b.      Whether any Third-Party Funder's approval is necessary for

litigation or settlement decisions in the action, and if the answer is in the

affirmative, the nature of the terms and conditions relating to that approval;
and

      c.    A brief description of the nature of the financial interest of the
Third-Party Funder(s).

    2.    Parties may seek additional discovery of the terms of a party's
arrangement with any Third-Party Funder upon a showing that the Third-Party
Funder has authority to make material litigation decisions or settlement decisions,
the interests of any funded parties or the class (if applicable) are not being
promoted or protected by the arrangement, conflicts of interest exist as a result of
the arrangement, or other such good cause exists.

    3.    Nothing herein precludes the Court from ordering such other relief as
may be appropriate.

_____
Chief Judge

2

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on November 30, 2022.

A copy of the foregoing was served upon the following counsel of record by electronic mail and upon the district court by overnight delivery:

<u>Via Email to counsel for Defendants</u>:

Chad S.C. Stover, Barnes & Thornburg LLP, 1000 North West Street, Suite 1500, Wilmington, DE 19801, chad.stover@btlaw.com; and

Glenn R. Bronson, J. Jeffrey Gunn, and James C. Watson, Trask Britt P.C., 230 South 500 East, Suite 300, Salt Lake City, UT 84101, GRBronson@traskbritt.com, JGunn@traskbritt.com, JCWatson@traskbritt.com

Anne Shae Gaza, Young, Conaway, Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, agaza@ycst.com

<u>Via Overnight Delivery to the Court</u>:

The Honorable Colm F. Connolly
J. Caleb Boggs Federal Building
844 N. King Street
Unit 31
Room 4124
Wilmington, DE 19801-3555

November 30, 2022

*/s/ David R. Bennett*
DAVID R. BENNETT
Direction IP Law

P.O. Box 14184
Chicago, IL 60614
D: (312) 291-1667
dbennett@directionip.com

## CERTIFICATE OF COMPLIANCE

The foregoing Petition filing complies with the relevant type-volume limitation of the of Fed. R. App. P. 21(d)(1) because this petition has been prepared using a 14-point proportionally-spaced typeface and includes 5,348 words.

November 30, 2022

*/s/ David R. Bennett*
DAVID R. BENNETT
Direction IP Law
P.O. Box 14184
Chicago, IL 60614
D: (312) 291-1667
dbennett@directionip.com